Samuel COLAIZZI and Samuel Indovina, Plaintiffs-Appellants,

v.

Daniel WALKER, Governor, State of Illinois; Donald Page Moore, etc., and Lauri Staples, Defendants-Appellees.

No. 80–1424.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1980.

Decided Aug. 5, 1981.

Gregory Freerksen, Chicago, Ill., for plaintiffs-appellants.

John C. Tucker, Jenner & Block, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Circuit Judge, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

In this action plaintiffs Colaizzi and Indovina, former non-tenured employees of the State of Illinois,[1] seek damages from defendants Daniel Walker, former Governor of Illinois, Donald Moore, former Director of the Illinois Office of Special Investigations, and defendant Staples, an investigator in that department.

Plaintiffs claim that they were discharged from state employment, with a public announcement that they were guilty of misconduct in office, without the benefit of a "due process" hearing in which they would have had an opportunity to answer charges against them. As initially filed, the complaint sought damages under federal civil rights statutes, 28 U.S.C.A. §§ 1331, 1343, 42 U.S.C.A. §§ 1981, 1983, and 1985, as well as a claim for relief under pendant state defamation claims. In 1974 the district court dismissed the complaint against the public defendants upon the ground that they were protected by principles of absolute immunity, and upon the further ground that plaintiffs had failed to claim a violation of a protected interest. On appeal, this Court held that while no cause of action had been stated under 42 U.S.C.A. §§ 1981 and 1985, since no racial or class based "invidious discrimination" had been alleged, plaintiffs had sufficiently stated a claim for relief under § 1983 for deprivation of a liberty interest without due process of law under *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). *Colaizzi v. Walker*, 542 F.2d 969 (7 Cir. 1976). The Court stated,

> . . . infliction of a stigma to reputation accompanied by a failure to rehire (or, *a fortiori*, by a discharge) states a claim for deprivation of liberty without due process within the meaning of the Fourteenth Amendment. Moreover, this combination of stigma plus failure to rehire/discharge states a claim even if the failure to rehire or discharge of itself deprives the plaintiff of no property interest within the meaning of the Fourteenth Amendment. *Colaizzi v. Walker, supra*, 542 F.2d at 973.

In remanding the case to the district court for further proceedings, we held that while the complaint did state a claim against defendants under § 1983, a qualified good faith immunity defense, if properly pleaded, would be available to them. It was also noted that, immunity aside, defendants were entitled to raise, and to establish, the truth of the charges against plaintiffs by way of defense.

Following remand, defendants filed answers alleging the affirmative defense of the truthfulness of the charges, the adequacy of pre- and post-termination hearings, and the defense of qualified good faith immunity. Defendants raised these issues by Motion for Summary Judgment, supported by affidavits, deposition testimony, and copies of material contained in the state investigative file.

---

* The Honorable Wesley E. Brown, Senior District Judge of the United States District Court for the District of Kansas is sitting by designation.

1. Colaizzi and Indovina were, respectively, Supervisor and Inspector of the Division of Private Employment Agencies, Illinois Department of Labor, and temporary appointees of the Governor, subject to discharge at will, without cause.

The district court granted Summary Judgment upon a finding that defendants had established the defense of qualified good faith immunity as a matter of law. Plaintiffs on this appeal contend that the district court misconstrued the good faith defense and erred in its application in this instance. In particular, plaintiffs contend that the charges against them were not true and that they are entitled to trial upon the issue.

It should be noted that the district court did not find that the charges in fact were "true" but that defendants had reasonable grounds to believe they were true and thus defendants were entitled to good faith immunity.

In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 at p. 103, the Supreme Court discussed the basis of qualified immunity, and emphasized that its scope may vary, depending upon facts as they may have appeared to the public executive at the time of the event:

> . . . in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

Applying the principles of *Scheuer,* the district court determined that the defendants Walker and Moore were justified in believing that plaintiffs had misused their public offices, and that therefore, the defense of qualified good faith immunity had been established as a matter of law. In reaching this conclusion the district court reviewed at length the investigative files of the Office of Special Investigations of the State of Illinois. As found by the district court, the investigation progressed as follows:

In the Spring of 1974, in the course of his duties as Director of OSI, Moore began investigations of Colaizzi due both to a variety of charges made against Colaizzi by the Better Government Association and instructions from the Office of the Governor. . . .

While this investigation was pending, Moore received information from defendant Maros to the effect that Colazzi [sic] and Indovina had suggested that if Zenith did not drop criminal charges against its employee, Esposito, Colaizzi would cause Zenith a lot of trouble.

When Zentih [sic] refused to drop the charges, Colaizzi, among other things, threatened to 'shut down' Zenith and ordered Zenith's Des Plaines Office to be closed. Subsequently, as both parties point out, Colaizzi conducted a series of administrative hearings regarding Zenith and its officers and employees. Zenith's attorney, Seymour Axelrood, provided Moore with documentary evidence in his possession, which corroborated this version of the events. Additionally, the documents in the PEA files confirm that a series of charges, including a charge by Colaizzi that Maros and Scully bribed a state's attorney, had been filed against Zenith by Colaizzi and that Colaizzi had appointed himself as the hearing officer.

After confronting Colaizzi and Indovina with these charges and receiving unsatisfactory answers, Moore reported the results of the OSI investigation and his recommendations to the Office of the Governor through William Goldberg, counsel to the Governor.

\* \* \* \* \* \*

Additionally, Governor Walker, upon being informed of the results of the OSI investigation, questioned Mr. Goldberg at length about the charges, the scope of the investigation, and the evidence which had been gathered in support of the charges.

It was after this series of events that Governor Walker decided to discharge the plaintiffs and via press releases publicly announced the reasons for this action.

In addition to the defense of qualified immunity, it is clear that the defense of the truth of the charges is available to defendants in this case. Thus in *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), it was emphasized that the purpose of affording an accused person an opportunity to present his version of events was to enable him to "clear his name," so that an essential element of a deprivation of liberty claim under § 1983 would be a publication of false information. In *Codd* information in a probationary police officer's personnel file indicated that he had been dismissed because he had attempted suicide, but no evidence was offered to the effect that this information was false. The Court stated, at pp. 627–628 of 429 U.S., at pp. 883–884 of 97 S.Ct. at pp. 96–97 of 51 L.Ed.2d:

> Assuming all of the other elements necessary to make out a claim of stigmatization ... the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge' ... 'The purpose of such notice and hearing is to provide the person an opportunity to clear his name,' .... But if the hearing mandated by the Due Process Clause is to serve any useful purpose, there must be some factual dispute between an employer and a discharged employee which has some significant bearing on the employee's reputation....

> \* \* \* \* \* \*

But the hearing required where a non-tenured employee had been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.' If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him .... Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required....

In concluding that the defendants were immune from liability because they in good faith believed the charges against plaintiffs were true, we believe that the district court confused the good faith test established for qualified immunity set out in *Scheuer v. Rhodes, supra*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90, with the absolute defense of truth found to be present in *Codd v. Velger, supra*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92.

■ The proper questions for the district court to have considered on our initial remand were whether defendants, in good faith, had reason to believe the procedures they followed satisfied the due process requirements of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), *or* whether the charges were *in fact* true. As to the first alternative, the district court failed to make any findings as to the nature and the extent of "hearings" given to plaintiffs, and whether or not such hearing opportunities, if any, satisfied due process of law. To have done so upon Motion for Summary Judgment would, in any event, have been improper because defendants have admitted in their brief that factual disputes exist as to the notice and opportunity to be heard that was given to Colaizzi and Indovina.[2]

■ As for the second alternative defense—that is, the truth of the charges—a mere finding that defendants, in good faith, believed the charges to be true is insufficient to avoid the requirement of notice and opportunity to be heard. If plaintiffs had not challenged the truth of the charges in question, as was the case in *Codd v. Velger, supra*, then the requirement of a hearing would not attach. However, such is not the

**2.** During the course of the state investigation, plaintiffs were "interviewed" about the Zenith affair. According to defendants, "While the details of the July interviews are disputed, it is undisputed that plaintiffs were informed that the subject matter was the Zenith affair ... and that Colaizzi and Indovina had an opportunity to and did present their side of the story. While Colaizzi and Indovina made general denials of the Maros-Scully-Axelrood-Collins allegations, their answers tended to confirm the accusations that had been made against them." (Brief of Appellees, p. 14).

case in this instance, for Colaizzi and Indovina have urgently contended that "the charges of misconduct alleged in the July 16th press release are demonstrably false." (Reply Brief, Appellants, p. 1). Under such circumstance, and in the face of disputed facts, the trial court could not properly make a determination concerning the truth of the charges upon a Motion for Summary Judgment.

The requirements of a due process hearing arise when a person is not given an opportunity to refute a charge leveled against him. Here the defendant former governor would be entitled to assert that a due process hearing was not required only (a) if Colaizzi and Indovina had admitted the charges or had failed to contest the charges, or (b) upon a finding by the trier of facts that the allegations were in fact true.

In order for the trial court to have entered judgment upon either of the alternative defenses, undisputed facts must have established (a) that plaintiffs had been afforded appropriate notice and an opportunity to be heard prior to the public announcement of the charges against them, or (b) that the charges were in fact true. Since disputed facts were present in both defenses, the case was not ripe for summary judgment. The matter will be remanded for a full trial on all factual and legal issues.

REVERSED and REMANDED for further proceedings in accordance with the views expressed herein. Rule 18 of the Rules of this Circuit will apply on remand.