670 F.2d 96
 Richard W. SEAL, Appellant,
v.
David PRYOR, Governor of the State of Arkansas; Willis B.
Smith, Jr., Director of the Department of Public Safety,
State of Arkansas; Hollis Spencer, Wade Tatum and Howard
Spinks, Commissioners of the Law Enforcement Training
Academy; and Lloyd Reese, Acting Commissioner of the
Arkansas Law Enforcement Training Academy, Appellees.
 No. 81-1083.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 9, 1981.
Decided Feb. 9, 1982.
 
 Philip E. Kaplan (argued), Silas H. Brewer, Jr., Kaplan, Brewer & Bilheimer, P. A., Little Rock, Ark., for appellant.
 Steve Clark, Atty. Gen. by Debby Thetford Nye (argued), Asst. Atty. Gen., Little Rock, Ark., for appellees.
 Before HEANEY and McMILLIAN, Circuit Judges, and BENSON,* District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Richard W. Seal appeals from a final judgment entered in the District Court[1] for the Eastern District of Arkansas dismissing his complaint alleging due process violations by reason of his dismissal from state employment. For reversal appellant argues that the district court erred in finding that he did not have a liberty interest which entitled him to procedural due process. For the reasons discussed below, we affirm the district court.
 
 
 2
 Appellant was employed as an instructor at the Arkansas Law Enforcement Training Academy (ALETA). ALETA, a state agency, is a division under the Department of Public Safety. In 1977, an Arkansas state legislator telephoned Kenneth Rogers, Director of ALETA, to report that a student in Class 77-B had complained to him that Instructor Osie L. Robinson had used offensive language and gestures in class. Rogers directed his assistant, Floyd Thomas, to conduct a discreet inquiry among the students to determine whether the allegation was true.
 
 
 3
 Thomas submitted a memorandum to Rogers dated March 28, 1977 (Thomas Memorandum), summarizing interviews with four students of Class 77-B. In these interviews the students told Thomas that both Robinson and appellant had used offensive gestures and language while teaching. Specifically, appellant was alleged to have unzipped his trousers on several occasions in front of the class.
 
 
 4
 Director Rogers and Assistant Director Thomas conferred with Robinson and appellant. At that meeting appellant admitted that he had either unzipped or simulated unzipping his trousers but explained that it had occurred only once and was done in a joking context at the end of a class break before all the students had returned to the classroom. Both instructors received an oral reprimand from Rogers.
 
 
 5
 On July 20, 1977, a newspaper article appeared in the Arkansas Gazette regarding the allegations that Robinson and appellant had engaged in the performance of lewd acts and the use of profane language while instructing their classes. The article referred extensively to the Thomas Memorandum and stated that appellant had unzipped his trousers on several occasions in front of his classes and that both instructors had used obscene language. The article also stated that a copy of the Thomas Memorandum had been mailed anonymously to the Gazette.
 
 
 6
 As a result of the article, Governor David Pryor ordered Willis Smith, Jr., the Director of Public Safety, to summon Rogers, Robinson and appellant to a meeting in the Governor's office on the morning of July 22, 1977. Robinson and appellant were not informed of the purpose of the meeting and neither had an attorney present. The instructors were given an opportunity to explain and demonstrate their actions. Appellant either unzipped or simulated unzipping his trousers and again admitted that he had engaged in such conduct on one occasion before students in Class 77-B. Appellant stated that he was unaware of what profanity he was alleged to have used. However, he further stated, "I will give you an example of possibly what could have happened. I'm not saying that this did happen; as a matter of fact I know that this didn't happen. (Example) I might give answers like that; I don't know how I would answer it unless it would come up ...." Governor Pryor and Smith then examined the critiques of the students and found that one-third indicated obscene language and gestures on the part of both instructors. At the conclusion of the meeting, Governor Pryor informed Robinson and appellant that they were dismissed and accepted Rogers' resignation.
 
 
 7
 On September 6, 1977, appellant requested a hearing before the ALETA Board. The request was not responded to. Robinson and appellant then filed an action in federal district court alleging that the allegations forming the basis of their dismissals were stigmatizing and therefore they should have been given a hearing to refute those allegations.[2] Following a one and a half day trial, the district court dismissed the complaint based on its specific findings, which included the following:
 
 
 8
 14. The court finds that the plaintiffs did on occasion use vulgar and offensive language and gestures in classes .... While a small part of the language may have served a legitimate instructional purpose, the vulgar and offensive gestures served no instructional purpose whatsoever.
 
 
 9
 15. ... Although the Gazette articles of July 20 and 21 stigmatized the plaintiffs and seriously damaged their standing and reputation in the community, there is no proof that any state official gave the March 28, 1977 memo to the Arkansas Gazette. Indeed, the proof indicates that Kenneth Rogers, Director of ALETA, made every effort to conceal plaintiffs' activities.... Governor Pryor and Director of Public Safety Smith had no knowledge of these activities until the (July 20 article)....
 
 
 10
 ....
 
 
 11
 18. There was no serious factual dispute at the hearing conducted in the Governor's office as to the language or actions of plaintiffs in serving as instructors in Class 77B. Plaintiffs freely and frankly admitted what they had said and done.
 
 
 12
 ....
 
 
 13
 20. Plaintiffs were discharged by Governor Pryor and Director Smith for good cause.
 
 
 14
 Seal v. Pryor, 504 F.Supp. 599 (E.D.Ark.1980). The district court held that no liberty interest was implicated because the instructors had not shown that the stigmatizing information was false or that state officials were its source.
 
 
 15
 On appeal appellant argues that a liberty interest was implicated because there is a factual dispute between the allegations against him and his version of the conduct. Specifically appellant argues that the charges against him were that he frequently unzipped his trousers in front of the entire class and used obscene language but that his testimony, in contrast, was that there was only one incident that occurred in front of part of the class and that he did not use obscene language in class. Appellant argues that this factual dispute entitles him to a post-termination hearing to refute the allegations against him. We disagree.
 
 
 16
 In order for appellant to prevail he must show that the stigmatizing information was false and that the offending state entity made the information public. Codd v. Velger, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) (per curiam); see also Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446-47 (2d Cir. 1980). In Codd it was emphasized that the purpose of affording an accused person an opportunity to present his version of the event was to enable him to "clear his name." In Codd, information in a probationary police officer's personnel file indicated that he had been dismissed because he had attempted suicide, but no evidence was offered to the effect that this information was false. The Court stated:
 
 
 17
 But the hearing required when a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely "to provide the person with an opportunity to clear his name." If he does not challenge the substantial truth of the material in question, no hearing would afford a promise of achieving that result for him ....
 
 
 18
 429 U.S. at 627-28, 97 S.Ct. at 883-884.
 
 
 19
 In the present case appellant freely admits that on at least one occasion he either unzipped or simulated unzipping his trousers in front of several students during class and that he might have used obscene language. The Governor and Director of Public Safety dismissed him for engaging in unprofessional conduct. Appellant's arguments as to the number of times he performed the act, the number of students in the classroom at the time and the question of whether he used obscene language do not challenge the substantial nature of the conduct that was the basis of his dismissal. See id. at 628, 97 S.Ct. at 884.
 
 
 20
 Appellant further argues that state officials were responsible for releasing the stigmatizing information because it got to the press without any complicity on the part of appellant and all of the information in the articles was from the ALETA authorized Thomas Memorandum. However, in view of our resolution of appellant's first issue, we find it unnecessary to reach this issue.
 
 
 21
 The judgment of the district court is affirmed.
 
 
 
 *
 The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation
 
 
 [1]
 The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas
 
 
 [2]
 Robinson and appellant also alleged a property interest in their continued employment as to entitle them to procedural due process. The district court dismissed the claim finding that personnel of the Department of Public Safety serve at the pleasure of the Director of the Department of Public Safety. Ark.Stat.Ann. § 5-914(3) (1976). Also, the Department of Public Safety is not a member of the State Merit System, nor do the employees of the Department of Public Safety, as a whole, become members of any civil service organization. Further, ALETA has no specific statutory scheme outlining a procedure for a discharged employee to lodge an appeal. The court also found that the evidence was totally devoid of any "clearly implied promise of continued employment." Appellant does not challenge these findings on appeal
 Robinson has not joined in this appeal.