Loraine POLLOCK, Plaintiff,

v.

BAXTER MANOR NURSING
HOME, Defendant.

No. 81–3002.

United States District Court,
W. D. Arkansas,
Harrison Division.

April 14, 1982.

John L. Burnett, Little Rock, Ark., for plaintiff.

G. Ross Smith, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff, Loraine Pollock, brought this action on January 6, 1981, alleging that the defendant, Baxter Manor Nursing Home, deprived her of procedural due process of law in discharging her from employment under stigmatizing conditions without according her prior notice or hearing. Plaintiff sought declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3) and (4).

. In its answer, defendant denied that any constitutionally protected "liberty" interest was implicated in plaintiff's termination and asserted alternatively that if a "liberty" interest was involved, the defendant .

sufficiently afforded plaintiff the protections guaranteed by the Fourteenth Amendment.

Plaintiff does not assert that a recognized "property" interest is implicated under the facts of the instant case.

### Findings of Fact

1. Defendant Baxter Manor Nursing Home (hereinafter "Defendant Nursing Home") is a facility owned, operated, and financed by the county government of Baxter County, Arkansas, and is located in Mountain Home, Arkansas.

2. Plaintiff Loraine Pollock (hereinafter "Plaintiff") is a citizen and resident of Baxter County, Arkansas.

3. Plaintiff was hired on September 30, 1976 by Defendant Nursing Home as a Food Service Specialist. Plaintiff's employment was "terminable at will".

4. The employee handbook of Defendant Nursing Home unambiguously lists certain conduct which will lead to dismissal. Among the reasons listed are "clocking someone else in or out of work" and "abuse of time clock."

5. Mr. William Flippo was employed by the Defendant Nursing Home as an administrator whose duties include the hiring and discharge of employees. Review of Mr. Flippo's personnel decisions is provided by the Executive Committee of the Defendant Nursing Home and the Board of Governors.

6. On August 29, 1979, Mr. Flippo was advised by Mr. H. L. Harris that Plaintiff had clocked her daughters (also employees of Defendant Nursing Home) in and out of work the previous day when, in fact, Plaintiff's daughters were absent from work. Mr. Flippo then checked with Mrs. Everly, an employee in the Food Service Department, and found that neither of Plaintiff's daughters were scheduled to work on either August 28, 1979, or August 29, 1979. Mr. Flippo then checked the time cards and found that one of Plaintiff's daughters had been clocked in on August 28, 1979, and the other had been clocked in on August 29, 1979. Mrs. Everly advised that neither of

Plaintiff's daughters had been present at work on either day.

7. On August 29, 1979, Mr. Flippo observed Plaintiff near the time clock. Shortly thereafter Mr. Flippo checked the time card of one of Plaintiff's daughters and found that the daughter had "clocked out" at 3:46 p. m. on August 29, 1979.

8. Early on the morning of August 30, 1979, Mr. Flippo re-checked the time cards of Plaintiff's daughters and found that the false entries had been "whited out" and obliterated. Plaintiff admitted that she was responsible for the obliteration but denied making the false entry.

9. On August 30, 1979, Mr. Flippo discharged Plaintiff in a private conference in his office and advised her of the reasons for dismissal. Plaintiff and Mr. Flippo completed a termination interview form which listed Plaintiff as "above average" in work quality and productivity, "average" in attendance and compatability, and "unsatisfactory" in loyalty and honesty.

10. On May 1, 1980, a hearing was held in the office of Defendant Nursing Home's attorney, to consider Plaintiff's claims for hearing and backpay. Members of the Executive Committee were present, along with Plaintiff, her daughters, Plaintiff's attorney, Mr. Flippo, and Mr. Flippo's witnesses. Plaintiff's attorney was permitted to question the witnesses. The Executive Committee, after consideration of the evidence, affirmed Mr. Flippo's decision.

11. On June 23, 1980, Plaintiff's attorney appeared before the Board of Governors to discuss Plaintiff's grievance. The Board of Governors, after discussion in Executive Session, affirmed Mr. Flippo's decision.

12. On September 19, 1980, Plaintiff applied for employment with White River Convalescent Home in Calico Rock, Arkansas, and signed a form designed to be sent to previous employers, authorizing release of information concerning Plaintiff's reasons for leaving the employment of Defendant Nursing Home.

13. Mr. Flippo responded, and sent the termination interview form, which states *inter alia,* that Plaintiff was terminated for "clocking in and out of daughter (sic) time cards when they weren't present at work."

14. On January 6, 1981, Plaintiff filed this Complaint disputing the findings of Mr. Flippo, The Executive Committee and the Board of Governors, asserting that she was deprived of due process of law in connection with her termination.

15. The Court finds that Plaintiff did in fact clock her daughters in and out of work when they were absent and that she tried to conceal that fact. The Court finds that Plaintiff consented to the release of any information concerning her termination by Defendant Nursing Home. The Court finds also that all statements made by Defendant Nursing Home to Plaintiff's prospective employer were true, accurate, and in good faith.

16. The Court finds that any of Plaintiff's losses she may have sustained due to unemployment following her discharge from Defendant Nursing Home are not attributable to any alleged procedural deficiency in Plaintiff's termination. The Court further finds that even had Plaintiff received a full-blown evidentiary judicial trial prior to her discharge, the result would have nonetheless been the same and Plaintiff would have sustained the same alleged losses. None of Plaintiff's alleged losses stem from any procedural defect brought about by Defendant Nursing Home.

### Discussion

It is long settled that the term "liberty" as used in the Fifth and Fourteenth Amendments is not confined to mere freedom from bodily restraint. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1953); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1971); *Bd. of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971). The liberty interest also includes the exercise of fundamental constitutional rights and other forms of freedom of activities. Any governmental restraint of constitutionally recognized "lib-erty" requires the protection of procedural due process.

Both parties concede that mere termination or dismissal of an employee from governmental employment is not a deprivation of a protected liberty interest. *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1971), at 599, 92 S.Ct. at 2698; *Roth, supra,* 408 U.S. at p. 576, 92 S.Ct. at p. 2708; *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1975), at 348, 96 S.Ct. at 2079; *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1976).

█ In order to fall within the prohibitions of the due process clause, the employee must suffer some deprivation of liberty at the hands of the governmental employer other than the loss of employment itself. *Roth, supra; Sinderman, supra; Codd v. Velger, supra.* The Supreme Court has held that mere injury to reputation alone does not constitute a deprivation of liberty. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, reh. den., 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976).

Plaintiff, however, contends that she was discharged under circumstances which created a stigma which foreclosed her freedom and ability to seek other employment.

Plaintiff was discharged on August 30, 1979, in the office of Mr. Flippo, an administrator, in a private conference involving Mr. Flippo, Plaintiff, and Mr. McMillan, another administrator. Plaintiff was advised of the reason for the dismissal, the continuing existence of policy prohibiting her conduct, and the nature of the evidence against her. No other persons were present. Plaintiff underwent a termination interview and a termination interview form was completed by Mr. Flippo. The termination interview form included the reason for termination, i.e., "clocking in and out of daughter (sic) time cards when they weren't present at work." The termination form listed Plaintiff as "above average" in "work quality" and "productivity," "average" in "attendance" and "compatability," and "unsatisfactory" in "loyalty" and "honesty." The form further stated that Mr. Flippo

would not recommend rehiring. The form was not released to the general public.

In October of 1979, Plaintiff appeared before a hearing officer of the Arkansas Employment Security Division, where she was represented by counsel and presented witnesses in her behalf. Mr. Flippo was also present. In May of 1980, at Plaintiff's request, a conference was held with Plaintiff, her counsel, the Executive Committee of the Baxter Manor Nursing Home, Mr. Flippo, and Plaintiff's daughters. The Executive Committee upheld Mr. Flippo's decision. In June of 1980, Plaintiff's counsel appeared before the Board of Governors of the Nursing Home to state her grievances. Mr. Flippo's actions were upheld here as well.

On September 29, 1980, more than a year after her termination, Defendant Nursing Home responded to a prospective employer's inquiry concerning Plaintiff's employment. Plaintiff expressly consented in writing to the release of all information at Defendant Nursing Home's disposal. Defendant Nursing Home provided the termination interview form to the prospective employer. Of this, Plaintiff complains.

In *Board of Regents v. Roth, supra*, the Supreme Court suggested that where the employer publicly disseminates a charge against the employee which might seriously damage his standing and associations in the community, a protected liberty interest may be triggered. *Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707. However, in *Paul v. Davis, supra*, the Supreme Court narrowed the seemingly broad language of *Roth* and *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), and set forth the factual prerequisites of an actionable procedural due process violation. There must be (1) defamation, and (2) the defamation has to occur in the course of the termination of employment. *Paul v. Davis, supra*, 424 U.S. at 710, 96 S.Ct. at 1164–65. *Harnett v. Ulett*, 466 F.2d 113 (8th Cir. 1972).

Here it is clear that there was no public dissemination by Defendant Nursing Home prior to the response to the prospec-

tive employer's inquiry on September 29, 1980, more than a year after the Plaintiff was terminated. Further, Plaintiff expressly authorized the release of the information. Whether or not this limited *consensual* disclosure subsequent to dismissal is sufficient to require the protection of the due process clause (*see, e.g., Cato v. Collins*, 539 F.2d 656 (8th Cir. 1976)), the disclosure itself, a year after the termination, cannot provide retroactive support for plaintiff's claim that the *termination* itself without a hearing was constitutionally prohibited.

Plaintiff however contends that the communication by the Defendant Nursing Home to a third-party prospective employer of the information that Plaintiff had been discharged due to dishonesty is "most certainly the classic example of the 'liberty' interest that the Fourteenth Amendment has been held to protect, regardless of the lapse of time between the Plaintiff's termination and the employer's communication of the damaging information, and regardless of the fact that the request to the defendant employer for information came only as a result of plaintiff's action in applying for a job."

However, the Supreme Court decisions in this area, as well as a very recent decision of the Eighth Circuit Court of Appeals clearly show that a discharge does not become constitutionally invalid merely because a contingency exists that derogatory information may be released by the employer at some point in the future. Where there is no disclosure of the employer's reasons for dismissal, there is no basis for a claim that the employee's interest in his "good name, reputation, honor, or integrity," *Constantineau*, supra, 400 U.S. at p. 437, 91 S.Ct. at p. 510, has been impaired.

In *Seal v. Pryor*, 670 F.2d 96 (8th Cir. 1982), the Eighth Circuit declared, "In order for appellant to prevail he must show that the stigmatizing information was false *and that the offending state entity made the information public.*" (Emphasis added). (Citing *Codd v. Velger*, 429 U.S. 624, 628, 97 S.Ct. 882, 884, 51 L.Ed.2d 92 (1977) and *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446–47 (2nd Cir. 1980)).

In *Seal, supra,* an instructor at the Arkansas Law Enforcement Training Academy was discharged for allegedly using offensive gestures and language while teaching. Shortly thereafter, a newspaper article appeared in the *Arkansas Gazette* regarding the allegations that the instructor had engaged in the performance of lewd acts and the use of profane language while teaching. A copy of the investigatory memorandum had been mailed anonymously to the *Gazette.* The Eighth Circuit, emphasizing that the "purpose of affording an accused an opportunity to present his version of the event was to enable him to 'clear his name'", concluded that there can be no violation of a protected "liberty" interest unless and until "the offending state entity makes the information public."

■ Therefore, Plaintiff's "good name, reputation, honor, or integrity," would not have been impaired, if at all, until the derogatory information was released, at her request, to a prospective employer.[1]

Thus, this Court concludes that Plaintiff's discharge without prior notice or evidentiary hearing implicated no constitutionally required procedural guarantees of due process.

It must now be determined whether Defendant Nursing Home's disclosure of the reasons for plaintiff's termination to the prospective employer without prior hearing "triggered" a legitimate "liberty" interest of the plaintiff.

In *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1976), the Supreme Court said:

Since the District Court found that respondent had no Fourteenth Amendment property interest in continued employment, the adequacy or even the existence of reasons for failure to rehire him presents no federal constitutional question. *Only if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination is such a hearing required.* (Emphasis added).

*Velger, supra,* at 628, 97 S.Ct. at 884.

The reason for this is that:

The purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons.

*Roth, supra,* 408 U.S. at 573 n.12, 92 S.Ct. at 2707 n.12.

■ Therefore, it is clear that only where the employer has disseminated a false and

---

1. It should be noted that not every derogatory disclosure is sufficient to impair reputation, honor or integrity to the point that a constitutionally protected liberty interest is involved.

The cases that have found a liberty interest usually involved serious and specific charges: *Judith Rodriguez de Quinonez v. Cesar Perez,* 596 F.2d 486 (1st Cir. 1979) (bank directors discharged for dishonesty); *Greenhill v. Bailey,* 519 F.2d 5 (8th Cir. 1975) (lack of intellectual ability as distinguished from performance); *Rolles v. Civil Service Commission,* 168 U.S. App.D.C. 79, 512 F.2d 1319 (1975) (fraud and dishonesty); *Lombard v. Board of Education,* 502 F.2d 631 (2d Cir. 1974) *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975) (mental illness); *Wellner v. Minnesota State Junior College,* 487 F.2d 153 (8th Cir. 1973) (racism); *McNeill v. Butz,* 480 F.2d 314 (4th Cir. 1973) (dishonesty).

The charges in the following cases were held not to implicate a defamation liberty interest: *Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 562 F.2d 701 (1970); *Stretten v. Wadsworth Veterans Hospital,* 537 F.2d 361 (9th Cir. 1976) (incompetence, inability and unwillingness to deal with co-workers in a professional manner); *Lake Michigan Community College Federation of Teachers v. Lake Michigan Community College,* 518 F.2d 1091 (6th Cir. 1975), *cert. denied,* 427 U.S. 904, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976) (breaking state law by striking); *Abeyta v. Town of Taos,* 499 F.2d 323 (10th Cir. 1974) (charges of improper and substandard job performance); *Blair v. Board of Regents,* 496 F.2d 322 (6th Cir. 1974) (failure to meet minimum standards); *Adams v. Walker,* 492 F.2d 1003 (7th Cir. 1974) (incompetence, neglect of duty and malfeasance in office); *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1 (7th Cir. 1974) (highly unethical conduct); *Shirck v. Thomas,* 486 F.2d 691 (7th Cir. 1973) (unsatisfactory performance); *Clark v. Holmes,* 474 F.2d 928 (7th Cir. 1972), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1972) (deficiencies in a teacher's professional conduct); *Russell v. Hodges,* 470 F.2d 212 (2d Cir. 1972) (sleeping on duty, absence from duty without authorization and wearing improper attire).

defamatory statement in connection with the discharge of an employee has there been a "potential 'liberty' infringement".

Plaintiff asserts most vigorously that the truth or falsity of the charges is wholly irrelevant in a *procedural* due process setting where purely *equitable* relief, such as back-pay, is sought. This is true, Plaintiff contends, because back-pay is a component part of the constitutional right itself.

Plaintiff seems to agree that where *damages* are sought "there is simply no point in deciding the question of procedural due process for one who has no complaint (because of the truth of the charges) in the first place." (Plaintiff's "Reply Brief", p. 2). Plaintiff argues that the result should be different where a purely procedural violation is alleged and equitable back-pay is sought.

However logical Plaintiff feels this argument may be, it is defective for three reasons. First, it is not the discharge here that is subject to constitutional infirmity. As noted above, Plaintiff's interest in her "good name, reputation, honor, or integrity," could not have been impaired, if at all, until the disclosure of the derogatory information. It is ridiculous to assume that the disclosure of information by the Defendant Nursing Home more than a year after plaintiff's termination requires retroactive equitable reinstatement to the defendant Nursing Home's payroll. In such a case the remedy (back-pay) would be inappropriate to the alleged violation (disclosure).

■ Secondly, the law does not treat back-pay as a "component part of the constitutional right itself" as Plaintiff urges. For if it were, then hypothetically, if a male employee of defendant Nursing Home were witnessed raping a nurse on the front steps of the building by a dozen employees, he would nonetheless be entitled to remain on the payroll pending a hearing. "If the law supposes that, the law is a ass, a idiot." (Words spoken by Mr. Bumble in *Oliver Twist*, Charles Dickens). We do not believe that the law is either "a ass" or "a idiot" because we cannot believe that the law "supposes" the result that the plaintiff urges.

Thirdly, even if it were a component part of the right itself, there is no constitutional violation, i.e. no cause of action at all, unless the information disclosed is *false*.

In the area of public-employee discharge cases, truth of the employer's statements is a complete defense.

In *Colaizzi v. Walker*, 655 F.2d 828 (7th Cir. 1981), the Court said:

In concluding that the defendants were immune from liability because they in good faith believed the charges against plaintiffs were true, we believe the district court confused the good faith test established for qualified immunity set out in *Scheuer v. Rhodes, supra,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90, *with the absolute defense of truth found to be present in Codd v. Velger, supra,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1976) (emphasis added).

*Colaizzi, supra,* at 831–32.

*Colaizzi, supra,* involved an appeal from a summary judgment. The 7th Circuit remanded the case for full trial on the issues of *sufficiency of the hearing provided* and *the truth of the charges.*

Thus, it is clear that this Court may determine the truth or falsity of the Defendant Nursing Home's statements to the Plaintiff's prospective employer.

Plaintiff's protected liberty interests go no further than to prevent the disclosure of *false* information by her employer. *Velger, supra; Roth, supra; Colaizzi, supra; U.S. v. Warren,* 612 F.2d 887 (5th Cir. 1980); *Seal v. Pryor,* 670 F.2d 96 (8th Cir. 1982).

■ Where a claimant asserts that dissemination of derogatory information by an employer has violated a property or liberty interest, failure to *prove the falsity* of the statement is fatal to the claim. *Croushorn v. Bd. of Trustees of Univ. of Tenn.,* 518 F.Supp. 9 (M.D.Tenn.1980) (emphasis added).

Simply stated, Defendant Nursing Home was at liberty to discharge plaintiff for little or no reason whatsoever, there being

no property right asserted. Therefore, plaintiff had no "right" to her job. Clearly then, it is not the deprivation of employment which may form the basis of plaintiff's claim, but rather the lack of a hearing. Plaintiff has not sought damages to remedy this denial, and could not do so because the charges were true. The decisions of the Supreme Court in this area indicate, and the majority of the decisions of the Courts of Appeal have held, that there is no compensable deprivation of the right to a hearing if the charges are true. Therefore equitable relief is not appropriate in this case, neither as a remedy for the alleged lack of a hearing (which this Court does not decide because unnecessary), nor as a remedy for the disclosure of information. Though the plaintiff feels this "puts the cart before the horse" (Plaintiff's "Reply Brief", p. 2), this is the approach apparently adopted by the Second, Fourth, Fifth, Seventh, and Eighth Circuits, as well as several district courts.

This Court has found the Defendant Nursing Home's statements concerning the Plaintiff to the prospective employer to be true and accurate upon the evidence presented. Thus, this Court concludes that Plaintiff suffered no infringement of any constitutionally protected "liberty" interest, either brought about by her termination, or by Defendant Nursing Home's release of information. Defendant Nursing Home's alleged denial of a hearing prior to such actions occasioned no deprivation of Plaintiff's constitutional safeguards.

Therefore, while it may be prudent or wise for a governmental employer to conduct a proper due process hearing prior to the discharge of an employee or the release of derogatory information, *the risk of truth or falsity of the information falls on the employer.* Where, as here, the derogatory information is shown to be true and accurate, the release of same without a proper hearing cannot form the basis of Plaintiff's claim. *Codd v. Velger, supra; Colaizzi v. Walker, supra; Love v. Sessions,* 568 F.2d 357 (5th Cir. 1978). *Seal v. Pryor, supra.*

Plaintiff relies upon *Wellner v. Minn. St. Junior College Bd.,* 487 F.2d 153 (8th Cir. 1973). In that case the Court held that the proper remedy for the discharge without hearing of a non-tenured faculty member falsely accused of being a "racist" was back-pay. Indeed, the facts of *Wellner* are similar to the instant case. In *Wellner,* the false charges were placed in the personnel file, accessible to prospective employers, rather than disseminated to the public. The Court concluded that the petitioner was nonetheless deprived of an interest in liberty, entitling him to a prior hearing.

Nevertheless, even should *Wellner* support the proposition that actual disclosure of the reasons for termination is not required for an employee to be entitled to relief, which is unlikely in light of *Seal v. Pryor, supra, Wellner* also reiterates that only *false* charges are actionable. The trial court in *Wellner* found "no evidence of any kind to sustain or lend veracity to such charges." *Wellner, supra,* at 155.

Thus, *Wellner* is not controlling here under the principles of *Codd v. Velger, supra, Seal v. Pryor, supra,* and *Colaizzi v. Walker, supra.* As noted, where the charges are in fact true, there is no constitutional violation occasioned by the lack of a hearing.

Plaintiff urges that *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1979), requires reinstatement to the payroll, where an employee is discharged without a hearing, *as a component part of his constitutional right.* However, there, as well as in *Wellner,* the trial court made no determination that the charges were accurate. Thus, Plaintiff's argument flies in the face of *Codd v. Velger,* which states without ambiguity that:

> Only if the employer creates and disseminates a *false* and *defamatory* impression about the employee in connection with his termination is such a hearing required. (Emphasis added).

*Velger, supra,* 429 U.S. at 628, 97 S.Ct. at 884. Plaintiff's argument is also expressly contradicted by *Colaizzi, supra; U. S. v. Warren, supra; Love v. Sessions, supra;* and *Seal v. Pryor, supra.*

The overwhelming weight of case law is to the effect that the falsity of the reasons for dismissal of a public employee must be alleged *and proven* before an alleged violation of due process is actionable, and before any relief, legal or equitable, can be awarded.[2] The Court adopts this reasoning.

It is apparent that, in accordance with the above, plaintiff is entitled to no relief on the basis of the proof presented at trial.

## Conclusions of Law

1. The Court has jurisdiction of the parties and the subject-matter of plaintiff's claim under 28 U.S.C. § 1343(3) and (4), and for purposes of this action brought pursuant to 42 U.S.C. § 1983, the actions of Defendant Nursing Home should be considered as "state action".

2. Termination of an individual from employment is not, *per se*, a deprivation of an interest in "liberty". *Roth, supra.* If allegations against an employee impose a stigma upon the employee that will foreclose future opportunities to obtain future employment a liberty interest may be implicated and may require procedural due process. *Harnett v. Ulett,* 466 F.2d 113 (8th Cir. 1972).

3. Before a "liberty" interest is implicated, in employee-discharge cases however, there must be publication of the reasons for termination, the publication must occur at the hands of the governmental employer, the charges must be defamatory, and the charges must be false. *Buhr v. Buffalo Public School Dist.,* 509 F.2d 1196 (8th Cir. 1974); *Cato v. Collins,* 539 F.2d 656 (8th Cir. 1976); *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Seal v. Pryor,* 670 F.2d 96 (8th Cir. 1982).

4. Neither equitable relief nor legal relief are appropriate if the charges made by the employer concerning the employee are in fact true and a sufficient basis for termination.

5. Equitable back-pay is not an appropriate remedy where, as here, the alleged disclosure does not occur until over a year after the termination. To conclude otherwise would transform every discharge into a "contingent expectancy" of a liberty interest violation.

6. The Plaintiff is not entitled to relief, under 42 U.S.C. § 1983, where as here, she would have been terminated from the Defendant Nursing Home's employ even had more elaborate procedures been afforded to Plaintiff in connection with her discharge. *Mt. Healthy v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

7. Nominal damages are not appropriate unless and until the elements of the claim for relief are demonstrated at trial. The elements of a claim for relief based upon a violation of a plaintiff's liberty interest, occasioned by a discharge from governmental employment, include the falsity of the charges. Therefore, no claim for relief has been proved, and no damages, nominal or otherwise, can be awarded in the instant case. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Seal v. Pryor,* 670 F.2d 96 (8th Cir. 1982).

8. Plaintiff is not entitled to judgment in any amount on her complaint filed herein, and the same should be dismissed.

A judgment in compliance with this opinion will be entered.

---

**2.** [Plaintiff argues that *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) requires this Court to award back-pay regardless of the truth or falsity of the charges. However this Court interprets *Carey*, insofar as applicable to governmental employee-discharge cases, as requiring only that nominal damages be awarded where the employee proves a cause of action, i.e., was in fact denied due process as a result of the termination without a hearing. Inasmuch as this Court has concluded that falsity of the charges is required before there can be a violation of due process in the first place, *Carey* is not applicable here.]