Loraine POLLOCK, Appellant,

v.

BAXTER MANOR NURSING HOME, Appellee.

No. 82–1584.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 7, 1983.

Decided Sept. 13, 1983.

John L. Burnett, Lavey & Harmon, Little Rock, Ark., for appellant.

G. Ross Smith, P.A., Little Rock, Ark., for appellee.

Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

Loraine Pollock instituted this action against Baxter Manor Nursing Home alleging that the nursing home deprived her of procedural due process of law by discharging her from employment under stigmatizing conditions without according her prior notice or a hearing. The nursing home denied that any constitutionally protected "liberty" interest was implicated in Pollock's termination and also alleged, in the alternative, that if a "liberty" interest was involved, Pollock was afforded the protections guaranteed by the fourteenth amendment. The district court, 536 F.Supp. 673, the Honorable H. Franklin Waters, found that Pollock was not entitled to judgment and accordingly dismissed her complaint. We reverse and direct the trial court to award Pollock nominal damages of one dollar. Reasonable attorney fees should be awarded to plaintiff's attorney for his limited success in vindicating his client's right to a due process hearing before the board of directors.

Loraine Pollock was fired by a county-owned nursing home for allegedly clocking her daughters' time cards in and out when her daughters had not reported for work. Pollock received an exit interview when she was terminated. Pollock contacted an attorney, Mr. Crain, who sought to obtain a hearing on the accusations made by the nursing home against Pollock. Crain contacted Mr. Johnson, the attorney for the nursing home, and arranged for a meeting on May 1, 1980, to discuss Pollock's claim for a hearing and back pay. Present at the meeting were Pollock, Crain, Johnson, several nursing home employees, and three members of the board of directors. The meeting was called a settlement conference and Crain expressly stated at the outset that the meeting was not to be considered as the due process hearing that Pollock was requesting. Johnson responded that he "understood." At the conclusion of the meeting, Johnson stated that he would advise the board of directors what had transpired in the meeting but what the board would ultimately decide was "up to them." The board of directors subsequently affirmed Pollock's dismissal without conducting a formal termination hearing.

While Pollock was in the process of applying for a new job, she signed an authorization form which permitted her previous employers to release information about her prior job performance. Upon presentation of this form, the county nursing home disclosed that Pollock was fired for clocking her daughters in and out when they were not working. Pollock then sued the nursing home for depriving her of liberty without due process of law. The district court found that Pollock had fraudulently clocked her daughters' time cards. The court concluded that because the allegations against Pollock were true, she was not deprived of a liberty interest by the defendant in hurting her reputation and her chances for future employment.

On appeal, Pollock's counsel concedes that the district court's finding that the allegations were true is not error. However, we find that Pollock was not afforded procedural due process due to the failure by the nursing home to hold a termination hearing in which Pollock could present witnesses and other relevant evidence. A fundamental purpose of the due process clause is to allow the aggrieved party the opportunity to present his case

and have its merits fairly judged. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1981). Pollock was not given such an opportunity. Thus, the issue becomes whether Pollock is entitled to damages to remedy the lack of due process afforded her by the nursing home.

In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) the Supreme Court held:

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

435 U.S. at 266, 98 S.Ct. at 1054 (citations omitted, footnote omitted).

It is clear that the Court in *Carey* determined that a plaintiff is still entitled to nominal damages for a failure to hold a due process hearing even if it is shown that the stigmatizing information is true. In the instant case, the nursing home refused to conduct a due process hearing and thereby violated Pollock's right to procedural due process. We accordingly reverse the district court and order that Pollock be awarded nominal damages of one dollar and reasonable attorney fees. *See Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

HENLEY, Senior Circuit Judge, dissenting.

The court's decision that Pollock was not afforded procedural due process in connection with her termination is questionable to say the least.

In May, 1980 a meeting was held in the office of Jimmy Johnson, attorney for the Baxter County Nursing Home. That meeting was held at the request of Mrs. Pollock. It was attended by the Administrator who had discharged Mrs. Pollock, by her two daughters, whose time cards were forged, by witnesses on behalf of the defendant, and by the Executive Committee of the Board of Governors. Both Pollock and the defendant nursing home were represented by counsel.

Mr. Crain, Pollock's then attorney, says the meeting was for the purpose of settling Mrs. Pollock's claim against the hospital and that he made it clear that he did not want the meeting to become the hearing Mrs. Pollock hadn't gotten. Crain had no witnesses other than Mrs. Pollock and her daughters. He testified that Johnson was going to show him the evidence he had. He says he was there to get reinstatement or a hearing and, inferentially at least, contends that he got neither.

Attorney Johnson on the other hand testified that the purpose of the meeting was to hear the facts so the Board could decide whether Mrs. Pollock was properly fired, that the meeting was scheduled so everyone could present the facts.

The discharging officer made a statement supported by witnesses. Mr. Crain actually participated and asked questions of witnesses. At some length he stated Mrs. Pollock's position. Mrs. Pollock herself made a statement attempting to explain what she was doing with the time cards in question and why she was at the time card machine.

At the conclusion of the meeting, Johnson, the nursing home officer, and the three Board members remained in the conference room, discussed the case and the Board members came to the conclusion that dismissal of Mrs. Pollock was correct. Shortly after the meeting Johnson advised Crain of the decision.

On cross-examination Johnson did not recall Crain having stated that he did not consider the meeting a hearing and didn't have any witnesses, nor did he recall whether the members of the Board were introduced as a committee empowered to make a decision, although they were introduced. He did reaffirm on cross that whatever facts Mrs. Pollock and her daughters desired to present would be heard and "we would clear the air."

Minutes of the full Board reflect that on June 23, 1980 Mr. Crain was present and made a request that Mrs. Pollock be reinstated. His request was coupled with a demand for back pay and a threat of a lawsuit. The Board refused to take favorable action on the request.

The court on rehearing does not dwell at length on the question whether Mrs. Pollock had due process; rather it briefly finds a lack of due process due to the failure to hold a hearing in which Pollock could present witnesses and other relevant evidence. Presumably, the court is now adopting with respect to due process the factual analysis made by Judge McMillian in his dissent to the first panel opinion. *Pollock v. Baxter Manor Nursing Home,* 706 F.2d 236, 243–44 (8th Cir.1983). As indicated by the brief factual account in this dissent, there is some conflict in the testimony as to the purpose and extent of the May 1, 1980 hearing in attorney Johnson's office, and I cannot subscribe fully to the analysis presumably relied upon by the court. But where, as here, the plaintiff knows a meeting of responsible officials is called to consider her case, where she and her daughters attend, where she and her attorney participate to the extent of making statements and cross-examining witnesses, I have difficulty in finding a lack of due process. Stated otherwise, on the record I cannot agree that the aggrieved party lacked opportunity to present her case and have its merits judged. *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

More disturbing is the court's holding, citing *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that plaintiff is entitled to nominal damages and attorney fees on account of lack of due process afforded by the nursing home.

It is to be remembered that we are dealing with a claimed loss of liberty by reason of disclosure of stigmatizing information to a prospective employer several months after the discharge in question. In September, 1980 the nursing home on request furnished information that Mrs. Pollock was terminated for clocking in and out her daughters when they were not present at work. Plaintiff does not on this appeal question the finding of the district court that Mrs. Pollock did in fact clock her daughters in and out when they were not present.

In determining whether the disclosure triggered a legitimate liberty interest of the plaintiff, the district court, relying on *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977), and *Seal v. Pryor,* 670 F.2d 96 (8th Cir.1982), quite properly held that truth in such cases is a complete defense, 536 F.Supp. at 677–78. It has been said *Codd* and *Seal* mean that a litigant need only allege falsity of the defaming material to trigger a liberty interest. McMillian, J., dissenting in *Pollock v. Baxter,* 706 F.2d at 238, 240. But if that be true, which I do not concede, it is to be repeated that as the case comes to this court it is not denied that the district court correctly found the charges against Pollock to be true. As was observed in *Codd,* 429 U.S. at 627, 97 S.Ct. at 883, the purpose of hearing is to provide the person an opportunity to clear his name. But if the hearing is to serve any useful purpose, it must be one which may have some significant bearing on the employee's reputation. It stands the Constitution on its head to hold on appeal that Pollock suffered loss by not having a hearing on charges, the truth of which is undisputed in this court.

In *Carey v. Piphus,* the Supreme Court did not specifically overrule *Codd,* and I would not so interpret *Carey* here. I would hold, as did the district court, that the disclosure itself a year after termination cannot provide support for plaintiff's claim that the termination itself without a hearing was constitutionally prohibited, and that subsequent disclosure of damaging but true information provides no basis for any recovery, even nominal.

Finally, I suggest consideration of the real controversy—attorney fees. Plaintiff has had a hearing before the nursing home authorities. She has had a full evidentiary

hearing before the district court. She has lost. The appeal can be here only to win pay for her attorneys. The court orders remand for award of reasonable attorney fees, thus probably triggering another round of litigation.

If the court is determined to award nominal damages, in view of the limited success on the litigation as a whole, I think the court should find that Pollock is not a prevailing party and award no attorney's fee under criteria laid down in *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This court should beware of trivializing the Constitution and § 1983 by making of them a program for lawyers' relief.[1]

In sum, I would affirm the judgment of the district court.

---

1. The assessment of fees in marginal cases is a problem on which the views of the judges of this court are by no means in accord, *see, e.g.,*

*Fast v. The School District of City of Ladue,* 712 F.2d 379 (8th Cir.1983).