Joycelyn A. THOMPSON, Plaintiff,

v.

The INTERNATIONAL ASSOCIATION
OF MACHINISTS AND AEROSPACE
WORKERS, et al., Defendants.

Civ. A. No. 83–1845.

United States District Court,
District of Columbia.

July 10, 1987.

Allen G. Siegel, Stephen J. Boardman, John R. Dwyer, Jr., Washington, D.C., for plaintiff.

Clinton J. Miller, III, Joseph Guerrieri, Jr., Highsaw & Mahoney, Washington, D.C., for defendants.

OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently before the court is plaintiff's application for an award of attorney's fees

and the parties' respective motions for assessment of costs against one another.

Plaintiff brought this action against defendant International Association of Machinists and Aerospace Workers (IAM) and four union officials alleging that her termination was based on unlawful discrimination and that defendants retaliated against her when she sought to redress this discrimination. In her amended complaint, she alleged violations of Title VII, 42 U.S.C. § 2000e et seq.; section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981; the Ku Klux Klan Act, 42 U.S.C. § 1985(3); and the District of Columbia Human Rights Act (DCHRA), D.C.Code § 1-2501 et seq. Prior to trial, the court dismissed her Title VII claims against three of the four defendants. At the conclusion of her trial, the jury found for defendants on the section 1981 claim, and for plaintiff on her section 1985(3) and DCHRA claims, awarding her $2,000 in compensatory damages and $200,000 in punitive damages on the DCHRA claim. The court reserved judgment on the Title VII claim, and defendants filed a timely motion for judgment nowithstanding the verdict, or, in the alternative for a new trial. Thereafter, the court granted defendants' motion for j.n.o.v. on the section 1985(3) claim, struck the jury's award of punitive damages on the DCHRA claim, and entered judgment in favor of defendants on the Title VII claim. *Thompson v. IAM*, 614 F.Supp. 1002 (D.D.C.1985). In short, defendants prevailed on all counts except plaintiff's DCHRA claim, on which she recovered $2,000.

In the pending application plaintiff seeks awards of approximately $246,000 in attorney's fees and expenses, and $8,000 in costs. She contends that she was the prevailing party, that the DCHRA mandates recovery of attorney's fees for prevailing parties, and that the Act narrowly limits this court's discretion in making such awards. Defendants vigorously dispute these contentions.

█ As an initial matter, the court must reject plaintiff's argument that the DCHRA *requires* courts to award reasonable attorney's fees to prevailing parties and thereby narrowly constrains judicial discretion over such awards. In advancing this argument, plaintiff misleadingly cites the Act for the proposition that:

> if the court "determines that a respondent has engaged in an unlawful discriminatory practice or has otherwise violated the provisions of this chapter, the [court] *shall* ... take such affirmative action, including but not limited to ... payment of reasonable attorney's fees; and ... payment of hearing costs."

Plaintiff's Application for an Award of Attorney's Fees and Expenses at 12 (*quoting* D.C.Code Ann. § 1-2553(a)(1) (1981)) (emphasis and bracketed language added by plaintiff). In fact, section 1-2553 does not pertain to judicial proceedings at all. Rather, it concerns the decisions and orders of the District of Columbia Commission on Human Rights, and states that where "the *Commission* determines that a respondent has ... violated the provisions of this chapter, the *Commission* shall ... [award] reasonable attorney's fees." D.C.Code § 1-2553(a)(1) (1981) (emphasis added).[1] By contrast, that portion of the DCHRA establishing a private right of action, section 1-2556, states that "[t]he court *may* grant such relief as it deems appropriate, including but not limited to, such relief as is provided in section 1-2553(a)." D.C.Code Ann. § 1-2556(b) (1981) (emphasis added). By its very terms, therefore, the statute does not purport to strip courts of their traditional discretionary authority over attorney's fees applications, but instead confirms that authority.

In addition, the *Guidelines for Payment of Compensatory Damages and Attorney's Fees under the Human Rights Act*

---

**1.** Plaintiff's citation of the *Guidelines for Payment of Compensatory Damages and Attorney's Fees Under the Human Rights Act of 1977*, 31 D.C.Reg. § 212.1, p. 6265, is similarly misleading, as that regulation again applies to situations in which a complainant prevails before the Commission. The court does not mean to suggest that the *Guidelines* are irrelevant to the disposition of this petition. They are not, however, mandatory regulations that dictate the court's decision.

*of 1977,* 31 D.C.Reg. § 200 *et seq.,* pp. 6259–66, upon which plaintiff also relies, *see* note 1 *supra,* expressly provide that the Human Rights Commission should, in determining appropriate fee awards, "be guided by Supreme Court decisions interpreting the attorney's fees provisions of Title VII ..., the Civil Rights Attorney's Fees Awards Act of 1976, ... and other federal fee-shifting laws." *Id.* § 212.6, p. 6265. The Supreme Court has in turn consistently emphasized "that the district court has discretion in determining the amount of a fee award." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Thus, the very regulations plaintiff cites as limitations on this court's authority recognize the role of judicial discretion.

■ Turning then to the merits of plaintiff's application itself, the threshold question is whether plaintiff was in fact the prevailing party in the litigation before this court. The Supreme Court in *Hensley* adopted a very liberal formulation of the test governing this determination: " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Id.* at 433, 103 S.Ct. at 1939 (*quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978)). It is true that here plaintiff obtained none of the punitive damages or injunctive relief she sought, that she ultimately failed to prevail on three of her four claims, and that she recovered relatively minimal sums against the defendants. Nevertheless, she did obtain a jury verdict that defendants had discriminated against her, and she did win more than nominal compensatory damages. She therefore did succeed on a "significant issue" and achieved "some of the benefit" she sought in bringing the litigation.

This finding, however, "brings the plaintiff only across the statutory threshold.... It remains for [this] court to determine what fee is 'reasonable.' " *Id.* 461 U.S. at

432, 103 S.Ct. at 1939. As a starting point, plaintiff's attorneys have submitted a detailed summary of the number of hours they spent on the various phases of this litigation and the hourly rates charged for this work, providing billing statements and other supporting documentation in appendices to the application. Multiplying these figures together produces a "lodestar" amount of $204,440.50 for work performed on the merits of plaintiff's case.[2]

As plaintiff's counsel recognize, this calculation provides only an estimate of the "reasonableness" of the fees sought.

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the "results obtained." This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

*Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940.

Addressing the first of these inquiries, plaintiff's attorneys argue that here plaintiff's various claims all involved the same common core of facts and issues, and thus her successful DCHRA claim is inextricably tied to, and cannot be segregated from, her unsuccessful Title VII and section 1981 claims. *See id.* at 434–35, 103 S.Ct. at 1940 (plaintiff entitled to recover fees for work performed on unsuccessful claims where those claims are closely related to successful claims); *Copeland v. Marshall,* 641 F.2d 880 892 n. 18 (D.C.Cir.1980) ("No reduction in fee is appropriate where the 'issue was all part and parcel of one matter' "). Correctly anticipating that the court would view plaintiff's section 1985(3)

---

**2.** This figure does not include the approximately $16,000 in fees plaintiff's attorneys seek to recover for work performed in connection with the fee application itself.

claim as unrelated to her successful DCHRA claim, however, counsel reduced their lodestar fee by 10%, to $183,996.45.[3]

With respect to the second question posed in *Hensley*—the level of success plaintiff obtained—her counsel argue strenuously that their fee request is reasonable in view of the complexity of the case, the tenacity of defendants' resistance to her litigation efforts, and her ultimate vindication by the jury on her underlying claim. Defendants, on the other hand, contend that plaintiff's victory was pyrrhic: she sought reinstatement with full seniority, back pay, front pay, and compensatory and punitive damages on four separate claims; ultimately she lost on three of these claims, recovered no punitive damages, obtained none of the injunctive relief she requested, and won a mere $500 from each of the four defendants. Under these circumstances, defendants argue, the attorney's fees awarded should not exceed her actual recovery.

There is, of course, no mathematical rule requiring proportionality between compensatory damages and attorney's fees awards, *see City of Riverside v. Rivera*, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), and courts have awarded attorney's fees where plaintiffs recovered only nominal or minimal damages. *See e.g., Pollock v. Baxter Manor Nursing Home*, 716 F.2d 545, 547 (8th Cir.1983) (upholding award of $50,000 in attorney's fees where plaintiff recovered $1.00 nominal damages); *Milwe v. Cavuoto*, 653 F.2d 80, 84 (2d Cir.1981) (directing award of "reasonable" attorney's fees where plaintiff recovered $1.00 in nominal damages on constitutional claim and "substantial" compensatory damages on pendent state law claims); *Allen v. District of Columbia*, 503 A.2d 1233 (D.C. App.1986) (ordering award of "reasonable" attorney's fees where plaintiff recovered nothing on constitutional claim and $3,000 on pendent state law claim). Nevertheless, the Supreme Court has emphasized that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of a [fee] award." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. Based on its extensive familiarity with plaintiff's claims in this case, her theories of liability, and the relief she requested, this court concludes that plaintiff's success was so limited in terms of what she achieved both for herself and for society in general, that a full award of the fees and expenses she requests would be unjust.

The enormous disparity between plaintiff's ultimate recovery of $2,000 on only one of her four claims and the extensive relief she sought in bringing suit speaks for itself. Under any objective standard, plaintiff's victory must be viewed as a "moral" one, since the compensatory damages she recovered were largely de minimus. Her attorneys contend, of course, that she was vindicated on her DCHRA claim and that, because that claim was inseverable from her unsuccessful section 1981 and Title VII claims, she should recover for work performed on those claims as well. This contention is complicated by the fact that here the common core of facts and issues that gave rise to the jury verdict in her favor led this court to find for defendants. Thus, while plaintiff claims vindication on her allegations of discrimination, defendants can make precisely the same claim on the basis of the court's decision, which was predicated on the exact same facts. This problem of characterizing what are in effect inapposite decisions would not, standing alone, dictate a reduction of plaintiff's counsel fees, for it would essentially elevate the court's assessment of the evidence at the expense of the jury's. It nevertheless indicates that plaintiff's "moral" victory was equivocal at best. *Cf. Roesel v. Joliet Wrought Washer Co.*, 596 F.2d 183, 187 (7th Cir.1979) (where both plaintiff and defendant prevailed on claims in discrimination suit, neither is entitled to attorney's fees).

Courts, of course, have permitted full recovery of attorney's fees on the strength of moral victories. Frequently, though, the

---

**3.** According to the application, this reduction is also made "in light of the size of [plaintiff's] damages award." Fee Application at 27. Thus,

the entire 10% reduction cannot be attributed to the time spent on her section 1985(3) claim.

plaintiffs in these cases seek relief that inures to the benefit of society at large as well as themselves. Thus, for example, in *City of Riverside*, a plurality of the Court upheld an award of $245,000 in attorney's fees where the plaintiffs recovered only $33,000 in compensatory damages. Justice Brennan, writing for four members of the plurality, noted that plaintiffs had redressed unlawful acts that were "motivated by a general hostility to the Chicano community," 106 S.Ct. at 2694, and thus the damage award did not reflect the full public benefit achieved by the litigation. *Id.* at 2695.[4] Similarly, in some cases where substantial attorney's fees are awarded on the basis of nominal or minimal damage awards, the constitutional rights vindicated were largely nonpecuniary in nature, and thus the amount of damages recovered failed to provide an accurate measure of the plaintiffs' victories. *See e.g., McCann v. Coughlin*, 698 F.2d 112 (2d Cir.1983) (affirming fee award of $50,000 where plaintiff established due process violation); *see also Pollock v. Baxter Manor Nursing Home*, 716 F.2d 545 (ordering award of reasonable fees where plaintiff prevailed on claim of due process violation). Finally, in a number of cases the injunctive or declaratory relief sought is far more important than any monetary relief requested—indeed, injunctive relief may sometimes be the only relief sought—and thus it is entirely inappropriate to link recovery of attorney's fees to the amount of damages obtained. *See, e.g., Copeland v. Marshall*, 641 F.2d 880, 906 (D.C.Cir.1980) (upholding fee award of $160,000 where plaintiff recovered $33,000 in damages but primary purpose of suit was equitable relief); *Freeman v. Dole*, 595 F.Supp. 710 (D.D.C.1984) (awarding $23,000 in fees where plaintiff recovered only $640 but obtained significant injunctive relief); *Stanford Daily v. Zurcher*, 64 F.R.D. 680 (N.D.Cal.1974) (awarding $47,500 in fees where plaintiffs recovered no damages, but won declaratory and injunctive relief).

None of these factors, however, is present here. To be sure, any successful attack on unlawful discrimination must be viewed as a benefit to society at large. Nevertheless, plaintiff's suit was essentially a private one—she did not challenge pervasive discrimination practices by defendants, she sought primarily monetary relief, and the injunctive relief she requested would have inured to the benefit of herself alone. To the extent she prevailed, she did not vindicate any civil or constitutional right, the deprivation of which is peculiarly noncompensable; on the contrary, courts and juries frequently award large damages to victorious plaintiffs in discrimination suits. Nor can it be said that plaintiff primarily sought or obtained injunctive relief. "Where[, as here,] recovery of private damages is the purpose of civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *City of Riverside*, 106 S.Ct. at 2700 (Powell, J., concurring); *see also Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943 ("extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees.") Here plaintiff's request for attorney's fees totalling nearly a quarter million dollars is so grossly disproportionate to her $2,000 recovery that the court must significantly reduce the fee award.

As the Supreme Court noted in *Hensley*, "[t]here is no precise formula for making [fee] determinations. [A] district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." 461 U.S. at 436–37, 103 S.Ct. at 1941. Defendants suggest that the court limit the fee award to the amount of plaintiff's recovery, but this direct proportionality test produces a wholly unsatisfactory and arbitrary result. Such a test was expressly rejected by a plurality in *City of Riverside* because it is inconsistent with many of the purposes underlying fee-shift-

---

4. In addition, both Justice Brennan and Justice Powell, writing separately, emphasized the district court's finding that, under the circumstanc-

es, plaintiffs' counsel had achieved excellent results for their clients. *City of Riverside*, 106 S.Ct. at 2697, 2699.

ing provisions, particularly the policy of encouraging law firms to take on meritorious civil rights cases where the potential recovery is small and the client impecunious. 106 S.Ct. at 2695–97. Defendants' proposed rule is simply a modified form of a contingent fee arrangement—the very type of private sector compensation system that fee-shifting statutes were intended to replace, *see City of Riverside*, 106 S.Ct. at 2695 ("Congress enacted [the Civil Rights Attorney's Fees Awards Act of 1976] specifically because it found that the private market for legal services failed to provide many victims of civil rights violations with effective access to the judicial process")—and proceeds from the discredited assumption that a small recovery in a civil rights case accurately reflects the underlying merits of the suit.

Unfortunately, the other factors identified by the courts [5] as relevant to fee determinations provide little guidance for resolving the present application. Thus, for example, this case, like most fact-based employment discrimination cases, necessarily required a good deal of time for proper preparation, and as noted above, plaintiff did succeed in convincing the jury that her charges were meritorious, if not especially deserving of recompense. Under these circumstances, an item-by-item examination of her attorney's time sheets would be of little value, for the court could not hope to pinpoint or even estimate the moment at which plaintiff's counsel should have realized that her claims, while at least partially meritorious, were unlikely to generate a large recovery. Similarly, the court is well aware that defendants vigorously defended this suit. This defense naturally elicited a greater effort on the part of plaintiff's highly able counsel and the court cannot say such a response was unreasonable. Conversely, however, because defendants

prevailed in most respects in this suit it seems inappropriate to reward their successful efforts by requiring them to pay a substantial award of attorney's fees. Such a result would inevitably penalize defendants for fighting what they perceived (to a large extent correctly) to be baseless charges of discrimination. *Cf. Copeland v. Marshall*, 641 F.2d at 904 (*successful* plaintiffs entitled to recover attorney's fees occasioned by tenacious defense).

In short, the court cannot say that plaintiff prosecuted the case unreasonably. While a review of the fee application reveals certain charges that might be deemed excessive, simply paring the award back by eliminating these isolated charges would do little to alter the enormous disparity between the attorney's fees and plaintiff's ultimate recovery. Yet a full or even significant reimbursement of attorney's fees would essentially make plaintiff's attorneys, as opposed to any of the actual litigants, the true beneficiaries of this suit.

The court's dilemma, simply put, is that any conceivable award it might make inevitably runs afoul of one or more of the various, and somewhat contradictory, judicial and legislative pronouncements on attorney's fee awards. Faced with this difficulty, it appears most appropriate to reduce plaintiff's award by three-fourths and to require each side to bear its own costs. A three-fourths reduction corresponds to plaintiff's success ratio on her various claims. Concededly, this mathematical formula contravenes the related-claims doctrine which permits recovery of attorney's fees for work performed on unsuccessful claims that are closely connected with any successful claims. Adherence to that doctrine in this case, however, would produce a fee award grossly disproportionate to plaintiff's success in the case.

---

**5.** The oft-cited formulation of those factors appears in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). They are:

"(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the cus-

tomary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

In addition, the reduction takes into account the ambiguous nature of plaintiff's moral victory—she did not simply fail to prevail on all her claims; rather, two of those claims resulted in express findings in favor of defendants.[6] Finally, while *Hensley* does not adopt or endorse any mathematical formula for mixed-claims cases, the Court did note that when various counts in a civil rights case are all intertwined, an examination of counsel's time on a claim-by-claim basis is unwarranted, and "[i]nstead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." 461 U.S. at 435, 103 S.Ct. at 1940. Under the special circumstances of this case, a three-fourths reduction results in a fee award more in keeping with the overall success plaintiff achieved.

In all likelihood, this Solomonic division will leave both parties dissatisfied: plaintiff's counsel will fail to recover for hours that the court has not said, and cannot say, were unreasonably spent; defendants, on the other hand, will be forced to pay plaintiff's attorneys nearly 30 times more in fees than they paid plaintiff herself in damages. Nevertheless, the court believes such a disposition is warranted in this unique case. A fee reduction beyond that ordered here would wholly undermine the primary purpose of fee-shifting provisions, which is to provide adequate legal representation for the poor by ensuring compensation for attorneys for work reasonably performed. On the other hand, discrimination suits are typically among the more remunerative of civil rights claims, and a refusal to permit full recovery here is unlikely to overly chill the bar's willingness to undertake such work. Additionally, a recovery greater than that allowed here would contravene the Supreme Court's recent admonitions that fee awards should bear some rational relation to the results plaintiff obtained in the underlying litigation.

Accordingly, plaintiff's attorneys billed $204,440.50 for time spent on the merits of her suit,[7] and incurred an additional $27,185.23 in expenses. A 75 percent reduction of this amount yields a figure of $57,906.43.

■ Counsel also seek $16,808.00 in fees and $2,177.00 in expenses for work performed on the fee application itself. This request stands on a very different footing than the request for merits-related work. As noted above, the court could not say that at any given point during the prosecution of this suit plaintiff's counsel should have sufficiently anticipated the ultimate outcome such that their continued efforts could be deemed unreasonable. In preparing this fee application, however, they knew that their client had recovered only $2,000 on one of four claims, and that her time for appeal had lapsed. Under these circumstances, an expenditure of $19,000.00 was wholly unreasonable. As defendants argue, such a commitment of time and resources demonstrates a total lack of

---

6. An overriding policy of the related-claims doctrine is to avoid "discouraging civil rights plaintiffs from advancing alternative theories in challenging a constitutionally suspect practice." *McCann v. Coughlin*, 698 F.2d 112, 130 (2d Cir. 1983). As the Second Circuit noted, fees should not be reduced simply because the conduct challenged is found unlawful on only one as opposed to several of the plaintiff's theories, since the policy behind fee-shifting statutes concerns the vindication of rights not theories. *Id.* Here, however, the litigation did not simply result in a finding of discrimination on one, as opposed to several possible grounds, but in two contradictory determinations: the jury's finding that defendants discriminated and/or retaliated against plaintiff, and the court's finding that they did not.

7. Plaintiff's counsel adequately explained the number of hours worked by each attorney and the hourly rates each charged. Defendants do not challenge the rates and the court finds them appropriate under the prevailing standards. *See Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C.Cir.1984), *cert. denied*, 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). Plaintiff's counsel used a lodestar figure of $183,996.45, rather than $204,440.50, but the former figure reflected adjustments for the unrelated section 1985(3) claim and plaintiff's small damage award. Because the court finds counsel's adjustments inadequate and adopts a different method of reduction for these factors, it uses as its starting point counsel's original, unadjusted lodestar.

billing judgment. The purpose of spending some 165 hours on a fee application is unmistakably to protect counsel's investment in the case, not to advance the interests of a client who has won only $2,000. The court therefore will award counsel $1,000 for work undertaken by attorneys and $1,500 for non-professional clerical work.

For all the foregoing reasons, it is this 9th day of July, 1987,

ORDERED that plaintiff's application for attorney's fees and expenses be and it hereby is granted in the amount of $60,-406.43; and it is

FURTHER ORDERED that the parties' respective motions for costs are denied. Each party shall bear its own costs.