# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2492
_____

| | |
|---|---|
| James D. Gibson, | * |
| | * |
|     Appellant, | * |
| | * |
|   v. | * |
| | * |
| Caruthersville School District No. 8; | * |
| Gearl Adams, President; Mike Hazel; | * |
| James Moore, Treasurer; Jean Dodd; | *  Appeals from the United States |
| P. G. Maners; Joe Parkinson; Rogers | *  District Court for the |
| Vanausdall; Olin Parks, Superintendent | *  Eastern District of Missouri. |
| of Caruthersville Schools; Lewis | * |
| Bradley Coleman, Principal | * |
| Caruthersville High School; Todd | * |
| Porter, Assistant Principal | * |
| Caruthersville High School, | * |
| | * |
|     Appellees. | * |

_____

No. 02-2493
_____

| | |
|---|---|
| James D. Gibson, | * |
| | * |
|     Appellee, | * |
| | * |
|   v. | * |
| | * |
| Caruthersville School District No. 8; | * |
| Gearl Adams, President; Mike Hazel; | * |

James Moore, Treasurer; Jean Dodd;   *
P. G. Maners; Joe Parkinson; Rogers   *
Vanausdall; Olin Parks, Superintendent   *
of Caruthersville Schools; Lewis   *
Bradley Coleman, Principal   *
Caruthersville High School; Todd   *
Porter, Assistant Principal   *
Caruthersville High School,   *
  *
     Appellants.   *

_____

No. 03-1572

_____

James D. Gibson,   *
  *
     Appellee,   *
  *
    v.   *
  *
Caruthersville School District No. 8;   *
Gearl Adams, President; Mike Hazel;   *
James Moore, Treasurer; Jean Dodd;   *
P. G. Maners; Joe Parkinson; Rogers   *
Vanausdall; Olin Parks, Superintendent   *
of Caruthersville Schools; Lewis   *
Bradley Coleman, Principal   *
Caruthersville High School; Todd   *
Porter, Assistant Principal   *
Caruthersville High School,   *
  *
     Appellants.   *

_____

Submitted:   April 15, 2003

Filed:   July 18, 2003
_____

Before WOLLMAN, FAGG, and RILEY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Following a bench trial on James Gibson's 42 U.S.C. § 1983 due process claim against Caruthersville School District No. 8 (the District), several District officials, and school board members, the district court awarded Gibson one dollar in nominal damages and ordered the District to complete the termination hearing it had begun "so that Gibson may attempt to clear his name."  In No. 02-2492, Gibson appeals the district court's finding that he was not entitled to a hearing as to his non-renewal and its failure to award compensatory or punitive damages.  In No. 02-2493, the District cross-appeals, contending that the district court erred by concluding that Gibson was entitled to complete the termination hearing on his 1999-2000 teaching contract.  In No. 03-1572, the District appeals the award of attorney's fees to Gibson.

Having consolidated the appeals for purposes of decision, we now affirm in No. 02-2492 and reverse in No. 02-2493, concluding that the District satisfied the requirements of the Due Process Clause with respect to Gibson's termination and non-renewal.  Because Gibson is no longer a prevailing party and thus not entitled to attorney's fees and costs, we reverse in No. 03-1572.

# I.

Gibson was hired by the District as a probationary teacher and coach for the 1997-1998 school year. The District employed Gibson pursuant to a one-year contract that was renewed for the 1998-1999 and the 1999-2000 school years. In November 1999, the District sought to terminate Gibson's contract after he allegedly assaulted a student. In a letter dated November 22, 1999, the District suspended Gibson with pay, alleging that Gibson had "grabbed a student by the throat, pushed him into the wall, and threatened to strike him with [his] fist[, and] . . . displayed threatening, intimidating, erratic and/or potentially violent behavior toward and in the presence of District Personnel, manifested by yelling, raised or clenched hands, cursing, rage and other threatening and aggressive gestures." The letter advised Gibson that he was entitled to a hearing, an attorney, to testify on his own behalf, to present witnesses and documents, to cross-examine witnesses, and to seek judicial review of an adverse decision. The letter further stated that Superintendent Olin Parks would recommend to the board that Gibson be terminated. A second letter dated November 30, 1999, alleged two additional grounds supporting Gibson's termination: insubordinate behavior in failing to respond to repeated requests for grade sheets, and material misrepresentations on his job application regarding his previous employment.

Pursuant to school board policy, Gibson requested a public hearing, which began on January 18, 2000. The District presented and Gibson cross-examined eight witnesses. Because of the late hour, the hearing was adjourned until February 3, 2000. On February 2, Gibson asked that the hearing be continued until February 24 because of a death in his family. Before the hearing was resumed, Gibson rejected the District's offer to pay him through the end of the school year, contingent upon his signing a release and agreeing to terminate the hearing. The offer letter stated that Gibson's teaching contract would not be renewed for the 2000-2001 school year and, because a probationary teacher has no right to such a renewal, the offer likely

exceeded what he could receive in a lawsuit. During January and February, the allegations against Gibson were publicized in newspapers and in pamphlets. In addition, news spread through word-of-mouth after several student and staff interviews were conducted. More than 100 people attended each hearing.

Gibson and his attorney met with the District's attorney immediately prior to the start of the February 24, 2000, continued hearing and were told by him that he was going to recommend that the school board close the hearing during the testimony of two students due to perceived intimidation by other students, members of the community, and Gibson. After objecting to this proposal, Gibson and his attorney met with the two students and their parents and were told that the students were not intimidated and that they were comfortable testifying in the open hearing. Gibson's attorney related this information to the District's attorney, who nevertheless maintained his stance that the hearing be closed during the students' testimony, offering instead to "proceed with the hearing over [Gibson's] objection, close it for the receipt of testimony from those two witnesses and then have the rest of the hearing open, or we can adjourn the hearing . . . while you . . . seek a writ of prohibition from our local judge requiring us to have the hearing open for receipt of all the testimony." Gibson's attorney then objected to the proposed closure on the record, informing the school board what the student witnesses had told him. Upon learning that the board intended to close the meeting, Gibson's attorney told the board that he wished to continue the hearing so that he could seek a writ of prohibition in the Circuit Court of Pemiscot County, Missouri, compelling the board to keep open the hearing.

Gibson filed such a petition on March 10. On March 9, however, the school board had met and voted not to renew Gibson's teaching contract for the following school year, offering as reasons Gibson's failure to follow district procedures in purchasing equipment and making travel arrangements. Despite these stated reasons, the district court found that the true reason that the board did not renew Gibson's

contract was because it considered him to be insubordinate, volatile, erratic, and potentially abusive to the students. At the end of the school year, the District declared Gibson's termination hearing moot, as his contract had expired and he had been paid in full for the entire school year. Gibson dismissed his petition for writ of prohibition on July 12, 2000.

## II.

In an appeal from a judgment entered following a bench trial, we review the district court's factual findings for clear error and its conclusions of law de novo. Speer v. City of Wynne, 276 F.3d 980, 984-85 (8th Cir. 2002). Gibson contends that the District violated his Fourteenth Amendment right to due process by denying him a hearing concerning his non-renewal and by failing to complete the termination hearing that began on January 18, 2000. We address the two claims together.

"A government employee is entitled to . . . due process only when he has been deprived of a constitutionally protected property or liberty interest." Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994). Any claim of a property interest in employment must be grounded in state law. Id. Under Missouri law, "a probationary teacher has a property interest in employment only for the remainder of the school year for which he or she has a contract." Smith v. King City Sch. Dist., 990 S.W.2d 643, 646 (Mo. Ct. App. 1998). Missouri law provides "no right to renewal . . . and no property interest in renewal arises." Id. Although the District's initiation of termination proceedings during the 1999-2000 school year implicated a property interest in that year's employment contract, Gibson was never terminated and, in fact, was paid everything that he was due under his 1999-2000 contract. Consequently, neither the District's failure to complete the termination hearing nor its failure to hold a non-renewal hearing implicated a property interest of which Gibson could not be deprived without due process.

The Due Process Clause protects against deprivations of liberty interests as well as property interests. When a governmental employer makes statements in connection with an employee's termination or non-renewal that seriously damage the employee's good name, the employee may be entitled to a due process hearing at which he is given an opportunity to rebut the allegations and clear his name. Shands v. City of Kennett, 993 F.2d 1337, 1347 (8th Cir. 1993) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573-74 (1972)).

To establish his entitlement to a "name-clearing hearing," the aggrieved employee must show that:

> 1) the public employer's reasons for the discharge stigmatized the employee by seriously damaging his standing and association in the community or by foreclosing employment opportunities that may otherwise have been available; 2) the public employer made the reason or reasons public; and 3) the employee denied the charges that led to the employee's firing.

Speer, 276 F.3d at 984. The requisite stigma has been found when the allegations involve "dishonesty, immorality, criminality, racism, or the like." Waddell v. Forney, 108 F.3d 889, 895 (8th Cir. 1997).

The district court found that the school board terminated Gibson because it considered him to be "insubordinate, volatile, erratic, and potentially abusive to the students." In light of the evidence of Gibson's subsequent difficulty in finding employment, we agree that the allegations, which included charges that he had assaulted and threatened students, were sufficiently stigmatizing to implicate Gibson's liberty interests. See Winegar, 20 F.3d at 899 (finding "allegations of unjustified child abuse . . . sufficiently stigmatizing to a teacher's reputation, honor, and good name in the community to implicate liberty interests"). Despite the undisputed evidence that Gibson, not the District, wanted the hearings held in public,

the attendance of between 100 and 250 people at the hearings indicates the already widespread knowledge of and interest in the allegations against Gibson. We concluded in Winegar that the publication requirement is satisfied when the allegations are spread as a result of the school district's investigation. Winegar, 20 F.3d at 899 n.3. By presenting eight of its witnesses at the public hearing on January 18th, 2000, the District further publicized the allegations against Gibson. Gibson has denied all allegations, save the charge that he made false statements on his job application regarding his employment history. Because Gibson's non-renewal was based upon the same stigmatizing allegations for which the termination hearing was initiated, his due process right to an opportunity to clear his name arose from both the non-renewal and the incomplete termination hearing.

On February 24, 2000, Gibson received the opportunity to clear his name to which he was entitled under the Fourteenth Amendment. Gibson's contention that he was given an all-or-nothing choice between closing the remainder of the hearing to the public or going to court to force the school board to hold the entire hearing open to the public is belied by the record. The stipulation of facts entered into by the parties states that "[the District's attorney] requested the school board to close the hearing for receiving testimony of two students." This stipulation parallels the testimony of the District's attorney. Although it would be a very different case had the District presented the bulk of its evidence in a public hearing and then closed that portion of the hearing during which Gibson presented his rebuttal, that is not the situation before us. Gibson was given the opportunity to rebut the allegations in an open meeting, closed only during the time the testimony of the two student witnesses was to be received. The Due Process Clause requires no more. See Coleman v. Reed, 147 F.3d 751, 755 (8th Cir. 1998). Although it is a matter of dispute whether the students were in fact intimidated to the point of altering their testimony, we have accorded school officials substantial discretion in matters regarding the safe operation of schools. See Golden v. Anders, 324 F.3d 650, 654 (8th Cir. 2003).

-8-

Gibson was free to argue in state court that his ability to clear his name depended upon hearing the testimony of the two students in public. He petitioned the appropriate court to do just that. Notably, neither the District nor Gibson suggested the possibility of proceeding with the other witnesses without waiting for a state court ruling regarding the two student witnesses. Until the school year ended, Gibson had a property interest in his employment contract. When the end of the school year arrived, mooting his property interest, Gibson had not yet presented his argument to the state court. After discussing the apparent mootness of his petition with the District, Gibson voluntarily dismissed the petition for writ of prohibition on July 12, 2000. We conclude that because Gibson was given an opportunity to clear his name, an opportunity that he failed to pursue or to preserve when he continued the termination hearing and then did not pursue to conclusion his state court petition, he is entitled to no further relief.

That portion of the judgment which denies a hearing on Gibson's non-renewal and denies his claim for compensatory and punitive damages is affirmed. That portion of the judgment which awards nominal damages and a name-clearing hearing is reversed, as is the order awarding attorney's fees, expenses, and costs.

RILEY, Circuit Judge, concurring in part and dissenting in part.

I concur with the majority in affirming the district court's denial of a non-renewal hearing and its denial of compensatory and punitive damages. However, because I would affirm the entire judgment, including the award of nominal damages, equitable relief, and attorney fees, I respectfully dissent.

The majority concludes the District provided Gibson with ample opportunity to clear his name but Gibson squandered the opportunity by continuing the termination hearing and by failing to pursue a conclusion to his state court petition.

I believe the majority draws its conclusion without factual support and without finding clear error below.

The majority rejects what can be reasonably inferred from the facts: the District had no intention of giving Gibson the opportunity to tell his side of the story, and used available procedural means to effectuate its goal. Following the opening hearing round, the District tried to obtain a settlement and a release from Gibson. When that attempt failed, the District closed a critical portion of the public hearing. When Gibson resisted and filed a petition for writ of prohibition to keep the hearing open, the school board voted against renewing Gibson's teaching contract, knowing Missouri law does not require non-renewal hearings for probationary teachers. Once the school year ended, the District advised Gibson's attorney that the termination issue was moot and completion of the hearing was unnecessary.

The court below made no finding that Gibson failed to prosecute his petition for writ of prohibition. The district court found Gibson's attorney dismissed the petition only after the District conveyed its unequivocal intention not to reconvene the hearing, and upon discovery that only a court with equitable powers could compel completion of the hearing. Under these circumstances, pursuing a ruling on the petition would have been futile. A writ would have prohibited the District from closing a future hearing. A writ would not have compelled the District to reconvene and complete the hearing.

The Supreme Court has declared "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed [and] . . . the denial of procedural due process [is] actionable for nominal damages without proof of actual injury." Carey v. Piphus, 435 U.S. 247, 266 (1978) (citations omitted). Our court has construed the holding in Carey to "entitle a plaintiff to nominal damages for a failure to hold a due process

-10-

hearing prior to termination even if the charges were true." Hogue v. Clinton, 791 F.2d 1318, 1322 (8th Cir. 1986). Denial of procedural due process also entitles a plaintiff to attorney fees. Id. at 1323. By depriving Gibson of the opportunity to openly challenge and refute the charges leveled against him, the District violated Gibson's right to procedural due process, thereby entitling Gibson to recover nominal damages and attorney fees, even if the stigmatizing charges were true and Gibson proved no actual injury. See Pollock v. Baxter Manor Nursing Home, 716 F.2d 545, 546-47 (8th Cir. 1983).

The district court also granted Gibson a name-clearing hearing. The Supreme Court recognizes a delayed Roth hearing as a remedy for a denial of due process based on the loss of a protected liberty interest. Codd v. Velger, 429 U.S. 624, 625 n.1 (1977) (per curiam) ("Respondent's amended complaint did not seek a delayed Roth hearing to be conducted by his former employer at which he would have the opportunity to refute the charge in question.") (citing Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972)). In his original *pro se* complaint, Gibson specifically asked for a "Due Process Hearing." A claimant's right to a name-clearing hearing "does not depend on a demonstration of certain success." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 544 (1985); see also Carey, 435 U.S. at 266 (ultimate outcome of hearing is irrelevant); Pollock, 716 F.2d at 546-47. While I doubt the District's procedural due process violation can be cured at this late stage, the district court did not abuse its discretion in granting equitable relief.

"A [party] who has been denied an opportunity to be heard in his defense has lost something indispensable." Snyder v. Massachusetts, 291 U.S. 97, 116 (1934). Due process demands more than an uncompleted, one-sided hearing. Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). The District deprived Gibson of the opportunity

to respond to and refute the charges leveled against him, and otherwise clear his name.  Gibson is entitled to a fair and completed hearing.

Because the right to procedural due process is absolute and actionable without proof of actual injury, I would affirm the district court in its entirety.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.